UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| LABORERS' LOCAL,<br><br>               Plaintiff,<br><br>     v.<br><br>INTERSIL ET AL.,<br><br>               Defendants. | Case No. 5:11-CV-04093 EJD<br><br>**ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS**<br><br>**(Re: Docket Item Nos. 19, 20)** |

## I.     INTRODUCTION

Presently before the court are two motions filed by Defendants to dismiss Plaintiff Laborers' Local #231 Pension Fund's ("Plaintiff") complaint.  Defendants are David B. Bell, Jonathan A. Kennedy, Susan J. Hardman, Peter R. Oaklander, David M. Loftus, Robert W. Conn, James V. Diller, Gary E. Gist, Mercedes Johnson, Gregory Lang, Jan Peeters, Robert N. Pokelwaldt, James A. Urry, Compensia Inc. ("Compensia"), and Nominal Defendant Intersil Corporation ("Intersil").

For the reasons discussed below, Defendants' motions to dismiss will be granted with leave to amend.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

This is a shareholders' derivative action suit brought for the benefit of Nominal Defendant Intersil against certain executives and directors of Intersil.  According to the complaint, Plaintiff

1    has been a shareholder of Intersil since July 2009.  See Complaint, Docket Item No. 1, at ¶ 10.

2    Intersil is a Delaware corporation, headquartered in Milpitas, California, which designs, develops,

3    manufactures and markets high-performance analog and mixed-signal integrated circuits.  Id. at ¶

4    11.  Compensia, a citizen of California, is an executive compensation advisory firm that assisted

5    the Intersil Board in connection with the 2010 executive pay.  Id. at ¶ 25.  Compensia was retained

6    by Intersil "to advise it on competitive market practices and other areas of Named Executive

7    Officer compensation."  Id. at ¶ 36 (quoting 2011 Proxy Statement, at 18).  The thirteen

8    individually named defendants are directors and officers of Intersil.  Id. at ¶¶ 12-24.  Defendant

9    Bell is the CEO, President, and a director of Intersil.  Id. at ¶ 12.  His pay was increased by 40.6

10   percent in 2010.  Id.  Defendant Kennedy is the Chief Financial Officer of Intersil, and his pay was

11   increased by 26.1 percent in 2010.  Id. at ¶ 13.  Defendant Hardman is Senior Vice President of

12   Intersil and her pay was increased by 38.6 percent.  Id. at ¶ 14.  Defendant Oaklander is Senior

13   Vice President of Intersil and his pay was increased by 36.7 percent.  Id. at ¶ 15.  Defendant Loftus

14   is also a Senior Vice President of Intersil and his pay increased by 66.6 percent.  Id. at ¶ 16.

15   Defendants Conn, Diller, Gist, Johnson, Lang, Peeters, Pokelwaldt, and Urry were all Intersil

16   directors at the time of the transaction and served either on the company's Compensation or Audit

17   Committees, which approved the 2010 pay raises.  Id. at ¶¶ 17-24.

18           On March 26, 2011, the Intersil Board recommended shareholder approval of the 2010

19   executive compensation.[1]  Id. at ¶ 36.  The executive compensation plan raised the compensation

20   of the company's named executives by an average of 41.7 percent, pursuant to Intersil's "pay for

21   performance" policy.[2]  Id. at ¶¶ 12-16, 31, 34.  On May 4, 2011, pursuant to the Dodd-Frank Wall

22   _____

     [1] The 2011 Proxy Statement, issued by Intersil on March 16, 2011 and quoted in the Complaint,
23   explained that the "say-on-pay" proposal gave "shareholders the opportunity to express their
     views" on executive compensation and that the "non-binding" vote would be taken "into
24   consideration."  See Docket Item No. 1, at ¶ 36.  According to the Complaint, the 2010 executive
     compensation had already been approved by the Board before it was recommended for approval.
25   Id. at ¶ 2.  The court may take judicial notice of Intersil's 2011 Proxy Statement as it is relied on by
     the Complaint.  Fed. R. Evid. 201(b)(2).

26   [2] Intersil's 2011 Proxy Statement states that Intersil has a "pay for performance" policy, where cash
     incentives are based on the achievement of "revenue goals" and "operating income goals."  The
27   Proxy Statement notes that "[t]he Named Executive Officers have successfully managed the
     Company . . . .  Fiscal year 2010 revenue grew by 35% and operating income grew by 127%."  See
28   Docket Item No. 1, at ¶ 36.

Case No. 5:11-CV-04093 EJD
ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS

**United States District Court**
For the Northern District of California

1   Street Reform and Consumer Protection Act ("Dodd-Frank Act"), a non-binding shareholder vote

2   was held on executive compensation.[3]  Id. at ¶ 39.  In that vote, 56 percent of voting Intersil

3   shareholders rejected the Board's 2010 CEO and top executive compensation.[4]  Id. at ¶¶ 2, 39.

4          On August 19, 2011, Plaintiff filed this action for breach of fiduciary duty and unjust

5   enrichment on behalf of Intersil by one of its shareholders against several of Intersil's current

6   executives and Board of Directors, alleging that the 2010 executive compensation approved by the

7   Board of Directors was "excessive, irrational, and unreasonable" and that Intersil has been and

8   continues to be severely injured by the executive pay.  Id. at ¶¶ 34, 41.  Plaintiff alleges that in

9   2010, Intersil suffered substantial financial declines in its net income, which declined by 31.6

10  percent, and earnings per share, which declined by 34.4 percent.  Id. at ¶¶ 32-33.  At the same time,

11  the Board approved substantial pay raises for its top executives, under the "pay for performance"

12  program.  Id. at ¶¶ 31, 34.  Thus, Plaintiff claims that the relationship between executive pay and

13  corporate performance was "tenuous at best."  Id. at ¶ 32.

14         Plaintiff also asserts a claim for aiding and abetting breach of fiduciary duty against

15  Compensia, an independent compensation consultant.  Plaintiff seeks recovery, on behalf of

16  Intersil, and asks for damages, declaratory judgment, equitable and/or injunctive relief,

17  implementation and administration of internal control and systems to prohibit and prevent payment

18  of excessive executive compensation, and costs and fees associated with this action.

19         Before filing this action, Plaintiff did not make a pre-suit demand on Intersil's Board.

20  However, Plaintiff alleges that demand would be futile because the entire board "faces a substantial

21  likelihood of liability for breach of loyalty" and the Board's decision is not entitled to business

22  judgment protection.  Id. at ¶ 45.

23         On October 17, 2011, Nominal Defendant Intersil, including the named individual

24  defendants, and Defendant Compensia each filed a motion to dismiss Plaintiff's complaint.  See

25  _____

[3] The Dodd-Frank Act, which added a new section 14A to the Securities Exchange Act of 1934,
26  requires public companies to allow their shareholders to conduct a non-binding vote on executive
    compensation at least once every three years.  15 U.S.C. § 78n-1.

27  [4] 60 of 86 reporting mutual fund owners (69.8%) voted against the 2010 executive compensation.
    See SEC filings, Decl. of Benny C. Goodman III Ex. A, Docket Item No. 22-2.
28

Case No. 5:11-CV-04093 EJD
ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS

1    Docket Item Nos. 19, 20.  Additionally, Compensia filed a notice of joinder to Intersil's motion to

2    dismiss.  <u>See</u> Docket Item No. 21.  Plaintiff filed its combined opposition to Defendants' motions

3    on November 21, 2011.  <u>See</u> Docket Item No. 22.  Defendants filed two reply briefs on December

4    16, 2011.  <u>See</u> Docket Item Nos. 23, 24.

### III.    JURISDICTION

Federal courts are courts of limited jurisdiction, possessing only that power authorized by

Article III of the United States Constitution and statutes enacted by Congress pursuant thereto.  <u>See</u>

<u>Bender v. Williamsport Area Sch. Dist.</u>, 475 U.S. 534, 541 (1986).  Plaintiff asserts federal

jurisdiction based upon the parties' diversity of citizenship.  Jurisdiction is proper under 28 U.S.C

§1332(a)(1), as there is complete diversity between Plaintiff and Defendants and the amount in

controversy exceeds $75,000.  Venue is proper under 28 U.S.C. §1391(a) because Intersil

maintains its executive offices and principal place of business in this District.

### IV.    LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed if it fails to

state a claim upon which relief can be granted.  "To survive a motion to dismiss, a complaint must

contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its

face.'"  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (internal citations omitted).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged."  <u>Id.</u>  Recitals

of the elements of a cause of action and conclusory allegations are insufficient.  <u>Id.</u>

Federal Rule of Civil Procedure 8(a) requires a plaintiff to plead each claim with sufficient

specificity to "give the defendant fair notice of what the . . . claim is and the grounds upon which it

rests."  <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (internal quotations omitted).

Moreover, the factual allegations "must be enough to raise a right to relief above the speculative

level" such that the claim "is plausible on its face."  <u>Id.</u> at 555, 570.  In considering the sufficiency

of a claim, the court must accept as true all of the factual allegations contained in the complaint.

<u>Id.</u> at 555-56.  However, the court is not required to accept as true legal conclusions cast in the

form of factual allegations.  <u>Id.</u> at 555.

4

1   If dismissal is granted under Rule 12(b)(6), leave to amend should be allowed unless the

2   pleading could not possibly be cured by the allegation of other facts.  Lopez v. Smith, 203 F.3d

3   1122, 1130 (9th Cir. 2000).  If amendment would be futile, however, a dismissal may be ordered

4   with prejudice.  Dumas v. Kipp, 90 F.3d 386, 393 (9th Cir.1996) (internal quotations omitted).

**V.       DISCUSSION**

6   **A.  Shareholder Derivative Suits**

7   A shareholder derivative suit is a uniquely equitable remedy in which a shareholder asserts

8   on behalf of a corporation a claim belonging not to the shareholder, but to the corporation.

9   Aronson v. Lewis, 473 A.2d 805, 811 (Del. 1984) (overruled on other grounds by Brehm v. Eisner,

10  746 A.2d 244 (Del. 2000)).  Pursuant to Federal Rule of Civil Procedure 23.1, which governs

11  derivative actions, a shareholder's complaint must state with particularity "any effort by the

12  plaintiff to obtain the desired action from the directors" and "the reasons for not obtaining the

13  action or not making the effort."  Fed. R. Civ. P. 23.1.  Rule 23.1 imposes a higher standard of

14  pleading than Rule 8(a).

15  **B.  Demand Futility**

16  Defendants move to dismiss the complaint on the ground that Plaintiff did not make a

17  demand on Intersil's Board of Directors, as required by Delaware law, and that Plaintiff failed to

18  plead particularized facts excusing the demand, as required under Rule 23.1.  Plaintiff concedes

19  that it did not make a pre-suit demand on Intersil's Board.  See Docket Item No. 1, at ¶¶ 44-47.

20  However, Plaintiff contends that the demand upon the Board would have been futile.

21  **1.  Choice of Law**

22  When a federal court sits in diversity, it looks to the forum state's choice of law rules to

23  determine the controlling substantive law.  Patton v. Cox, 276 F.3d 493, 495 (9th Cir. 2002).  Here,

24  because Intersil has its corporate headquarters and main place of business in Milpitas, California,

25  the court applies California state law.

26  Pursuant to the "internal affairs" doctrine, which is generally followed by courts in

27  California, "the law of the state of incorporation governs liabilities of officers or directors to the

28  corporation or its shareholders."  In re Sagent Tech., Inc., Derivative Litig., 278 F. Supp. 2d 1079,

5

1086 (N.D. Cal. 2003); see Cal. Corp. Code § 2116.  Additionally, the demand requirements for a shareholder derivative suit are determined by the law of the state of incorporation.  Kamen v. Kemper Financial Services, Inc., 500 U.S. 90, 96, 108-09 (1991) ("the function of the demand doctrine . . . is a matter 'substance' not 'procedure' . . . .  [Courts] must apply the demand futility exception as it is defined by the law of the state of incorporation"); Potter v. Hughes, 546 F.3d 1051, 1054 n.1 (9th Cir. 2008) ("the substantive demand requirement is an issue of state law"); In re Silicon Graphics Inc. Sec. Litig., 183 F.3d 970, 990 (9th Cir. 1999) (superseded by statute on other grounds).  Accordingly, because Intersil is incorporated in Delaware, the court applies Delaware law to determine whether demand is excused.

Under Delaware law, "directors of a corporation and not its shareholders manage the business and affairs of the corporation, and accordingly, the directors are responsible for deciding whether to engage in derivative litigation."  Levine v. Smith, 591 A.2d 194, 200 (Del. Ch. 1991) (internal citation omitted) (overruled on other grounds by Brehm, 746 A.2d 244).  Because directors are empowered to manage or direct the business affairs of the corporation, a shareholder seeking to bring a derivative action must first make a demand on that corporation's board of directors, giving the board an opportunity to examine the alleged grievance to determine whether pursuing the action is in the best interest of the corporation.  Aronson, 473 A.2d at 812.  The right of a shareholder to prosecute a derivative suit is limited to situations where the shareholder has demanded that the directors pursue the claim and they have wrongfully refused to do so or where demand is excused because the directors are incapable of making impartial decisions regarding such litigation.  Rales v. Blasband, 634 A.2d 927, 932 (Del. 1993) (quoting Levine, 591 A.2d at 200).

To prove that demand is excused, a shareholder must plead with particularity the reasons why such demand would have been futile.  Fed. R. Civ. P. 23.1.  Under Delaware law, failure to make a demand may be excused if a plaintiff can raise a reasonable doubt that (1) a majority of the board is disinterested or independent, or (2) the challenged act was a product of the board's valid exercise of business judgment.  Aronson, 473 A.2d at 814.  If either part of the test is satisfied, demand is excused.  Brehm, 746 A.2d at 256.  However, where a plaintiff fails to adequately allege

6

United States District Court
For the Northern District of California

1    particularized facts demonstrating that either of the <u>Aronson</u> prongs has been met, the complaint

2    must be dismissed.  <u>See</u> <u>Aronson</u>, 473 A.2d 805.

3    **2.  First Prong of Aronson: Independent and Disinterested**

4    Under the first part of the <u>Aronson</u> test, Plaintiff must raise a reasonable doubt that a

5    majority of the board is disinterested or independent.  Directorial interest exists whenever divided

6    loyalties are present, where the director will receive a personal financial benefit from a transaction

7    that is not equally shared by the stockholders, or when a corporate decision will have a "materially

8    detrimental impact" on a director but not on the corporation or its stockholders.  <u>Rales</u>, 634 A.2d at

9    936; <u>Aronson</u>, 473 A.2d at 812.  Independence exists when a director's decision is based on "the

10   corporate merits of the subject before the board rather than extraneous considerations or

11   influences."  <u>Aronson</u>, 473 A.2d at 816.

12   Plaintiff insists that the complaint creates a reasonable doubt as to the independence of the

13   whole Board because the Board of Directors faces a substantial likelihood of liability for breach of

14   loyalty as a result of the approved 2010 executive compensation.  The duty of loyalty mandates

15   that the best interests of the corporation and its shareholders take precedence over any interest

16   possessed by a director or officer.  <u>See</u> <u>Cede & Co. v. Technicolor, Inc.</u>, 634 A.2d 345, 361 (Del.

17   1993).  To establish a breach of loyalty, a plaintiff must allege that a director or officer "was on

18   both sides of the transaction, or derived any personal financial benefit from it in the sense of self-

19   dealing . . . ."  <u>Id.</u> at 362 (quoting <u>Aronson</u>, 473 A.2d at 812).  Plaintiff has not pled facts that show

20   a majority of the Board breached its duty of loyalty, as the complaint only alleges that one director

21   derived personal financial benefit.

22   Under Delaware law, "the mere threat of personal liability for approving a questioned

23   transaction, standing alone, is insufficient to challenge either the independence or disinterestedness

24   of directors . . . ."  <u>Aronson</u>, 473 A.2d at 815.  A plaintiff may not "bootstrap allegations of futility"

25   by pleading merely that "the directors participated in the challenged transaction or that they would

26   be reluctant to sue themselves."  <u>Blasband v. Rales</u>, 971 F.2d 1034, 1049 (3rd Cir. 1992) (citing

27   Delaware law).  Demand is not excused simply because the Board might be liable for a breach of

28   duty of loyalty as a result of approving the 2010 executive compensation.

7

1    Additionally, Plaintiff claims that a pre-suit demand against Defendant Bell is excused

2    because, as the CEO of Intersil, he lacks independence as he has received and continues to receive

3    monetary compensation and benefits from Intersil.

4    The court finds that Plaintiff does not meet its burden of proving that a majority of the

5    directors are interested or not independent.  Plaintiff has alleged that only one director, Defendant

6    Bell, received any personal benefit from the challenged transaction.  Plaintiff has not pled any facts

7    to show that the Board was dominated by Defendant Bell or that the Board was so under his

8    influence that the majority of its members were not independent.  See Levine, 591 A.2d at 205.

9    Accordingly, Plaintiff has not met the first prong of the Aronson test for demand futility.

10    **3.  Second Prong of Aronson: Business Judgment Rule**

11    Under the second prong of the Aronson test, Plaintiff must raise a reasonable doubt that the

12    transaction is entitled to the protection of the business judgment rule.  In re Walt Disney Co.

13    Derivative Litig., 825 A.2d 275, 286 (Del. Ch. 2003).  The business judgment rule is "a

14    presumption that in making a business decision the directors of a corporation acted on an informed

15    basis, in good faith and in the honest belief that the action taken was in the best interest of the

16    company."  Aronson, 437 A.2d at 812.  Under the business judgment rule, "directors are entitled to

17    a presumption that they were faithful to their fiduciary duties . . . . [and] the burden is upon the

18    plaintiff in a derivative action to overcome that presumption."  Beam v. Stewart, 845 A.2d 1040,

19    1048-49 (Del. 2004).  To rebut the business judgment rule presumption, "plaintiffs must plead

20    particularized facts sufficient to raise (1) a reason to doubt that the action was taken honestly and in

21    good faith or (2) a reason to doubt that the board was adequately informed in making the decision."

22    In re J.P. Morgan Chase & Co. S'holder Litig., 906 A.2d 808, 824 (Del. Ch. 2005) (quoting In re

23    Walt Disney Co., 825 A.2d at 286).  "[A] decision made by a loyal and informed board will not be

24    overturned by the courts unless it 'cannot be attributed to any rational business purpose.'"  Cede,

25    634 A.2d at 361 (quoting Sinclair Oil Corp., 280 A.2d 717, 720 (Del. 1971)); see In re Walt Disney

26    Co., 825 A.2d at 286-87.  In Delaware, corporations are empowered to "[a]ppoint such officers and

27    agents as the business of the corporation requires and to pay or otherwise provide for them suitable

28

**United States District Court**
For the Northern District of California

8

1    compensation." 8 Del. C. § 122(5). A board's decision on executive compensation is "entitled to

2    great deference." Brehm, 746 A.2d at 263.

3          The complaint fails to allege facts showing that Intersil's Board was not adequately

4    informed in making the decision regarding the 2010 executive compensation. With regards to the

5    honesty and good faith of the Board, Plaintiff points to the shareholder vote to call the directors'

6    decision into question. See In re J.P. Morgan, 906 A.2d at 825.

7          Plaintiff claims that the Board's decision regarding increased 2010 executive pay was

8    inconsistent with Intersil's "pay for performance" compensation policy, and therefore, not entitled

9    to business judgment protection. Plaintiff alleges that the company's net income and earnings per

10   share declined, whereas executive compensation rose. However, Defendants claim that the

11   compensation was in line with Intersil's policy. Intersil's 2011 Proxy Statement explained that

12   performance-based incentives would be based on "revenue goals" and "operating income goal."

13   See Docket Item No. 1, at ¶ 36 (quoting 2011 Proxy Statement). Plaintiff does not contend that

14   Intersil's targets were not reached; in fact, Defendants claim that in 2010 both revenue and

15   operating income increased substantially. See Docket Item No. 19, at 23. However, Plaintiff

16   claims that even with that information, the majority of shareholders expressed their opinion that

17   Intersil's executive compensation was not in line with the company's own "pay for performance"

18   policy. Plaintiff claims that the negative "say-on-pay" shareholder vote is evidence showing that

19   directors failed to act in the shareholders' best interests and rebuts the presumption that the Board's

20   decision regarding compensation is entitled to business judgment protection.[5]

21   _____
22   [5] Plaintiff relies heavily on NECA-IBEW Pension Fund on behalf of Cincinnati Bell, Inc. v. Cox,
     2011 WL 4383368 (S.D. Ohio Sept. 20, 2011), a similar case recently decided in the United States
23   District Court for the Southern District of Ohio applying Ohio state law to interpret the Dodd-
     Frank Act. The court found that where a majority of shareholders, in a shareholder vote,
24   disapproved of the executive compensation, plaintiff has demonstrated sufficient facts to show that
     there is reason to doubt that the directors could exercise their independent business judgment over
25   whether to bring suit against themselves for breach of fiduciary duty in awarding the challenged
     compensation. Id. at *4. However, this case has been called into question by Plumbers Local No.
26   137 Pension Fund v. Davis, 2012 WL 104776 (D. Or. Jan. 11, 2012). The District Court for the
     District of Oregon noted the Cincinnati Bell court apparently lacked subject matter jurisdiction
27   and the plaintiff failed to disclose contrary authority in response to the court's specific inquiry. Id.
     at *5.

28   A recent case decided by the Georgia Superior Court, Teamsters Local 237 Additional Security
     Benefit Fund ("Beazer") v. McCarthy, No. 2011-cv-197841(Superior Court of Fulton County, Ga.,

Case No. 5:11-CV-04093 EJD
ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS

United States District Court
For the Northern District of California

1    The Dodd-Frank Act was signed into law in July 2010 in light of the financial crisis in this

2    country.  It is described, in part, as "[a]n Act to promote the financial stability of the United States

3    by improving accountability and transparency in the financial system . . . ."  Dodd-Frank Wall

4    Street Reform and Consumer Protection Act, Pub. L. No. 111-203, 124 Stat. 1376 (2010).  In a

5    report on The Restoring American Financial Stability Act of 2010, later renamed the Dodd-Frank

6    Act, Senator Christopher Dodd noted that, "[i]n connection with the crisis . . . investors need more

7    protection; shareholders need a greater voice in corporate governance . . . .  Congress is

8    empowering shareholders in a public company to have a greater voice on executive compensation .

9    . . ."  S. Rep. No. 111-176 at 35-37 (2010).  The Senate Committee on Banking, Housing, and

10   Urban Affairs held hearings for nearly three years in order to "identify[] and examin[e] gaps,

11   overlaps, and shortfalls in a regulatory system that has not been updated since the 1930s" and, as a

12   result, created "the reform our financial system needed and provided the American people with the

13   economic stability that they deserve."  Hearing on the Implementation of the Dodd-Frank Wall

14   Street Reform and Consumer Protection Act Before the S. Comm. on Banking, Housing and Urban

15   Affairs (Sept. 30, 2010) (statement of Sen. Christopher Dodd, Chairman, S. Comm. on Banking,

16   Housing and Urban Affairs).

17

18   Sept. 16, 2011), applied Delaware law in a situation similar to the case at hand.  In Beazer,
     plaintiffs alleged that defendants had breached their duties of loyalty, candor, and good faith by
19   approving "excessive" executive pay and that the results of the shareholder "say on pay" vote
     rebutted the presumption of the business judgment rule.  Id. at *3.  Defendants in that case, as here,
20   moved to dismiss the complaint, alleging that plaintiffs did not properly plead excuse from the
     demand requirement.  The Georgia Superior Court decided that, under Delaware law, plaintiffs did
21   not meet the first prong of the Aronson test, because only one of the directors was alleged to have
     received the challenged compensation.  Id. at *8.  Furthermore, the court determined that plaintiffs
22   did not meet the second prong of the Aronson test when plaintiffs pled that the negative "say on
     pay" vote constituted evidence to rebut the business judgment rule.  Id. at *10.  First, the court
23   noted that the vote was held after the challenged decision was made, so the Board could not have
     considered the result of the shareholder vote when making decisions regarding executive pay, and
24   thus the directors did not fail to act on an informed basis when they did not take the vote's results
     into consideration.  Id.  Second, the court reiterated that the Dodd-Frank Act preserves the pre-
25   existing fiduciary duty framework concerning directors' executive compensation decisions and that
     shareholders' independent business judgment does not rebut the presumption of business judgment.
26   Id. at *11.  The court refused to conclude that "an adverse say on pay vote alone suffices to rebut
     the presumption of business judgment protection applicable to directors' compensation decisions."
27   However, the court did not conclude that such a vote could not be used along with other facts to
     rebut the business judgment protection.  Id. at *12.
28

10

Case No. 5:11-CV-04093 EJD
ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS

1    Section 951 of the Dodd-Frank Act requires public companies to conduct a non-binding

2    shareholder vote on executive compensation at least once every three years.  15 U.S.C. § 78n-1.

3    Senator Barney Frank noted that the "say on pay" provision was passed "to empower

4    shareholders."  Hearing on Executive Compensation Oversight Before the H. Comm. on Financial

5    Services (Sept. 24, 2010) (statement of Rep. Barney Frank, Chairman, H. Comm. on Financial

6    Services).  The shareholder vote is meant to give shareholders "the ability to hold executives

7    accountable, and to disapprove of misguided incentive schemes."  156 Cong. Rec. S5902-01,

8    S5916 (2010) (statement of Sen. Jack Reed).  Section 951 expressly states that the shareholder vote

9    is not binding and it "may not be construed . . . to create or imply any change to the fiduciary

10   duties" nor "to create or imply any additional fiduciary duties."  15 U.S.C. § 78n–1(c).  While the

11   few courts analyzing section 951 of the Dodd-Frank Act agree that it does not create any new

12   fiduciary duties,[6] no court in California or Delaware has decided whether a negative shareholder

13   vote under the Dodd-Frank Act can be used as evidence to rebut the business judgment rule

14   presumption under Delaware law.[7]

15   Congress was explicit that the shareholder vote on executive pay is non-binding, but the

16   Act is silent on what consideration courts should give to the shareholder vote.  Where resolution of

17   a question of federal law turns on a statute and the intention of Congress, courts first look to the

18   _____

19   [6] The U.S. District Court in Southern California recently ruled that the Dodd-Frank Act did not create a private right or fiduciary duties.  Assad v. Hart, 2012 WL 33220 (S.D. Cal. Jan. 6, 2012); Dennis v. Hart, 2012 WL 33199 (S.D. Cal. Jan. 6, 2012).  In both cases, the court held that plaintiff failed to state a claim for breach of fiduciary duty based on defendants' failure to respond to the negative say on pay vote.  Assad, 2012 WL 33220, at *4; Dennis, 2012 WL 33199, at *3.  However, the court declined to rule on whether a negative vote can rebut the business judgment rule, noting that "[t]o the extent that Plaintiff seeks to use the negative say on pay vote as evidence that the business judgment presumption was rebutted, resolution of the issue depends on California state law."  Assad, 2012 WL 33220, at *5; Dennis, 2012 WL 33199, at *4.  The court remanded this issue to state courts.

24   [7] As discussed above, the Georgia Superior Court in Beazer, No. 2011-cv-197841(Superior Court of Fulton County, Ga., Sept. 16, 2011), and the District Court for the District of Oregon, Plumbers Local No. 137, 2012 WL 104776 (D. Or. Jan. 11, 2012), have interpreted Delaware law as it relates to the shareholder vote provision of the Dodd-Frank Act.  The District Court for the Southern District of Ohio interpreted the shareholder provision of the Dodd-Frank Act under Ohio state law.  Cincinnati Bell, 2011 WL 4383368 (S.D. Ohio Sept. 20, 2011).  The District Court in the Southern District of California interpreted the Dodd-Frank Act under Delaware law, but declined to rule on whether the shareholder vote can rebut the business judgment rule, instead remanding the decision to California state court.  Assad, 2012 WL 33220; Dennis, 2012 WL 33199.

Case No. 5:11-CV-04093 EJD
ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS

statutory language, and if it is unclear, then to the legislative history.  Blum v. Stenson, 465 U.S.

886, 896 (1984).  Congress must have intended for the shareholder vote to have some weight if, as

discussed above, the goals of section 951 are to empower shareholders and to hold executives

accountable.  Furthermore, if the shareholder vote approving executive compensation is meant to

have no effect whatsoever, it seems unlikely that Congress would have included a specific

provision requiring such a vote.

　　　　Earlier cases, decided before passage of the Dodd-Frank Act, held that Delaware law allows

directors to take good faith actions that they believe will benefit stockholders, "even if they realize

that the stockholders do not agree with them."  In re Lear Corp. S'holder Litig., 967 A.2d 640, 655

(Del. Ch. 2008); see Mercier v. Inter-Tel (Del.) Inc., 929 A.2d 786 (Del. Ch. 2007); TW Services,

Inc. v. SWT Acquisition Corp., 1989 WL 20290, at *8 n.14 (Del. Ch. Mar. 2, 1989).  In Lear, the

company's board knew that shareholder approval of the contested decision was unlikely, but there

was no shareholder vote that expressly indicated disagreement.  The Lear court noted that it would

be inconsistent with the business judgment rule for a court to "sustain a complaint grounded in the

concept that directors act disloyally if they adopt a merger agreement in good faith simply because

stockholders might (?), were likely (?), or were almost certain (?) to reject it."  In re Lear, 976 A.2d

at 655.  In the case at hand, unlike in Lear, no speculation is necessary, because the Intersil Board

knew for a fact that a majority of shareholders did not approve the executive compensation.

Therefore, reliance on cases such as Lear, which were decided before passage of the Dodd-Frank

Act and where no shareholder vote took place, is misplaced under these particular facts.

　　　　Looking to precedent from other courts that have interpreted the shareholder vote provision

of the Dodd-Frank Act, as well as the purpose of the Dodd-Frank Act, this court concludes that a

shareholder vote on executive compensation under the Act has substantial evidentiary weight and

*may* be used as evidence by a court in determining whether the second prong of the Aronson test

has been met.  Ruling only on the particular facts presented in the case before the court, where 56

percent of shareholders disapproved of Intersil's 2010 executive compensation package, the court

finds that the shareholder vote *alone* is not enough to rebut the presumption of the business

12

1    judgment rule.  Additional facts are required for plaintiff to raise a reasonable doubt that the

2    decision was not a valid exercise of business judgment.

3         Accordingly, the 56 percent negative vote by Intersil shareholders does not, on its own,

4    rebut the business judgment presumption.  Furthermore, Plaintiff has not pled sufficient facts to

5    raise a reasonable doubt that the challenged act was a product of the board's valid exercise of

6    business judgment.  As such, Plaintiff has not met the second prong of the <u>Aronson</u> test for demand

7    futility.

8         Accordingly, Plaintiff has not pled facts sufficient to prove that demand is excused.  As

9    such, Defendants' motions to dismiss the Complaint for failure to state a claim are GRANTED

10   with leave to amend.

11   **C.  Unjust Enrichment**

12        Plaintiff also seeks to assert a claim for unjust enrichment against Defendants Bell,

13   Kennedy, Hardman, Oaklander, and Loftus.  Plaintiff claims that pay hikes violated the Board's

14   "pay for performance" policy and were unwarranted in light of Intersil's financial performance in

15   2010.  In the Complaint, Plaintiff points to 2010 pay increases ranging from 26.1 percent to 66.6

16   percent for Defendants Bell, Kennedy, Hardman, Oaklander, and Loftus.  Plaintiff claims that the

17   demand requirement is excused for the unjust enrichment claim, as discussed above.  Plaintiff

18   alleges that this claim stems from the wrongful conduct alleged against the Board and that

19   reasonable doubt exists that the Board could independently evaluate a demand challenging the

20   executive compensation.

21        However, Defendants argue that Plaintiff claims that only Defendant Bell received anything

22   of benefit from the challenged transaction and that Plaintiff fails to allege demand futility as to its

23   unjust enrichment claim.

24        For the reasons discussed above, the court finds that Plaintiff has not pled facts sufficient to

25   prove that demand for any claim is excused.  Therefore, Defendants' motions to dismiss the

26   Complaint for failure to state a claim are GRANTED with leave to amend.

27

28

Case No. 5:11-CV-04093 EJD
ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS

**D.  Aiding and Abetting**

Plaintiff claims that Defendant Compensia, a consultant to the Compensation Committee of the Intersil Board of Directors, aided and abetted the alleged breach of fiduciary duty.  Defendant Compensia argues that the claim for aiding and abetting should be dismissed because Plaintiff has provided no justification for its failure to make a pre-suit demand on Intersil's Board of Directors with respect to its claim against Compensia and Plaintiff has not shown how such a demand was excused.  Furthermore, Defendant Compensia claims that Plaintiff's claim would fail as a matter of law because the complaint fails to properly allege the conduct required to support the claim.

Defendant Compensia argues that tort claims brought against third parties who are not fiduciaries of the plaintiff are not governed by the "internal affairs" doctrine discussed above and California law, rather than Delaware law, applies to the claim. See, e.g., In re Brocade Commc'n Systems, Inc. Deriv. Litig., 615 F. Supp. 2d 1018, 1036 (N.D. Cal 2009)  ("The court is not convinced, however, that the internal affairs doctrine mandates that Delaware law apply to tort claims brought against individuals who are not fiduciaries of a plaintiff employer.") ; Solow v. Stone, 994 F. Supp 173, 177 (S.D.N.Y. 1998) (declining to apply internal affairs doctrine to aiding and abetting fiduciary claim).  In California, to prevail on a claim for aiding and abetting an intentional tort, plaintiff must establish that the accused: "(a) knows the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other to so act or (b) gives substantial assistance to the other in accomplishing a tortious result and the person's own conduct, separately considered, constitutes a breach of duty to the third person." Davenport v. Litton Loan Servicing, LP, 725 F. Supp. 2d 862, 882 (N.D. Cal. 2010).

Plaintiff, on the other hand, contends that Delaware law applies to the claim for aiding and abetting.  In support of applying Delaware law, Plaintiff relies on cases holding that claims for aiding and abetting are governed by the laws of the state of incorporation of the party alleged to have committed the underlying breach of duty.  However, none of the cases that Plaintiff relies on are binding on this court.  In Delaware, "a third party may be liable for aiding and abetting a breach of fiduciary duty if the third party 'knowingly participates' in the breach," meaning that the third party acts "with the knowledge that the conduct advocated or assisted constitutes such a breach."

14

Beard Research, Inc. v. Kates, 8 A.3d 573, 603 (Del. Ch. 2010) (quoting Malpiede v. Townson, 780 A.2d 1075, 1096-97 (Del. 2001)).

Ultimately, the court does not find it necessary to decided which state's laws apply to this claim.  Regardless of which state law applies to determine the claim of aiding and abetting, the complaint does not allege any particular act that Defendant Compensia purportedly took to aid or abet any breach by the Board of Directors.  Plaintiff merely states that Defendant Compensia "aided and abetted and rendered substantial assistance" to the Board's breach of fiduciary duty and therefore "acted with knowledge of the primary wrongdoing, substantially assisted the accomplishment of that wrongdoing, and was aware of its overall contribution to and furtherance of the wrongdoing."  See Docket Item No. 1, at ¶ 56.  Without further factual allegations, Plaintiff's claim fails as a matter of law.  Moreover, Plaintiff does not allege any basis upon which the Board could not have disinterestedly and independently considered a demand to sue Defendant Compensia.

Accordingly, Plaintiff's claim for aiding and abetting breach of fiduciary duty is legally insufficient.  Therefore, Defendant Compensia's motion to dismiss the claim for aiding and abetting is GRANTED with leave to amend.

## VI.    CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss for failure to state a claim pursuant to Rule 12(b)(6) and Rule 23.1 are GRANTED.

IT IS HEREBY ORDERED that Plaintiff's Complaint is dismissed with leave to amend.

**IT IS SO ORDERED.**

Dated: March 7, 2012

_____
EDWARD J. DAVILA
United States District Judge